IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NIKKI WEBBER ALLEN
:
:
v.                                    :    Civil Action No. DKC 15-1960
:
TV ONE, LLC, et al.
:

### MEMORANDUM OPINION

Presently pending and ready for resolution in this employment discrimination case is a motion to dismiss filed by Defendant TV One, LLC ("Defendant" or "TV One"). (ECF No. 21). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be denied.

## I.  Background

### A.  Factual Background[1]

This case involves gender discrimination and retaliation claims brought by Plaintiff Nikki Webber Allen ("Plaintiff") against Defendant, her former employer. Defendant is a television network based in Silver Spring, Maryland. Plaintiff began working as the Director of Talent Relations and Casting

---

[1] When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the amended complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). Unless otherwise noted, the facts outlined here are alleged in the amended complaint and construed in the light most favorable to Plaintiff, the nonmoving party.

for Defendant when the network launched in 2004.  Among other responsibilities, Plaintiff "was charged with working as an executive producer for various TV One shows [and] booking talent for TV One shows, including TV One-on-One, hosted by TV One's founder, chairperson, and board member, Catherine Hughes."  (ECF No. 16 ¶ 17).  In this role, Plaintiff reported to Ms. Hughes for at least a portion of her responsibilities.  Ms. Hughes is also the mother of TV One Chief Executive Officer and President Alfred Liggins.

Plaintiff asserts that she "was subjected to a pervasive pattern of sexual harassment and gender discrimination by Ms. Hughes." (*Id.* ¶ 18).  The crux of Plaintiff's claim is that Ms. Hughes attempted to convince Plaintiff to take up a romantic relationship with Ms. Hughes' son, Mr. Liggins.  During a business trip to Chicago in October 2004, Ms. Hughes allegedly said to Plaintiff, "I'm going to be your mother one way or another.  Either you will marry [Mr. Liggins] or I will marry your father and be your stepmother." (*Id.* ¶ 20).  Plaintiff also recounts that Ms. Hughes "spoke in sexually explicit terms about [] Plaintiff's father's looks and about the time period when [Ms. Hughes] was a student of his at Howard University." (*Id.*).  During this same business trip, Plaintiff contends that "Ms. Hughes became upset with [Plaintiff] for declining [Ms.

2

Hughes'] invitation to Las Vegas, Nevada," to celebrate Plaintiff's birthday. (*Id.* ¶ 24).

Plaintiff alleges that, at some later date, Ms. Hughes sternly questioned "why [Plaintiff] has not married Mr. Liggins yet. Ms. Hughes then stated that [] Plaintiff was old and that her babies would likely be 'retarded.'" (*Id.* ¶ 25). According to Plaintiff, once "Ms. Hughes realized that [] Plaintiff was not going to marry Mr. Liggins . . . , she began to baselessly attack [] Plaintiff's job performance." (*Id.* ¶ 27). The amended complaint contains an example: "Plaintiff missed a taping of Ms. Hughes' show due to a scheduling conflict with a show [for which Plaintiff] was the executive producer []. After the show, Ms. Hughes publicly berated [] Plaintiff in front of co-workers for missing [Ms. Hughes'] show taping due to [] Plaintiff's obligations as executive producer." (*Id.* ¶ 28). Plaintiff also recounts an instance from 2006 when Ms. Hughes demanded that Plaintiff personally ask Denzel Washington for an interview "knowing that [such a request] was contrary to standard industry protocol." (*Id.* ¶ 33). When Plaintiff instead communicated Ms. Hughes' request for an interview through traditional channels, Ms. Hughes allegedly demanded that "Plaintiff be terminated for incompetence. TV One's Chief Operating Officer, Jonathon Rodgers, intervened and prevented" Plaintiff's dismissal. (*Id.* ¶ 35).

Plaintiff also contends that she was forced to endure false rumors and disparaging comments at the workplace.  According to Plaintiff, her "former supervisor, Lee Gaither, Senior Vice President of Programming, falsely told [] Plaintiff's colleagues that Mr. Liggins and [] Plaintiff were romantically involved. Mr. Gaither also told TV One staff members that [] Plaintiff was only hired because she was sexually involved with Mr. Liggins." (*Id.* ¶ 36).  Plaintiff asserts that she complained directly to Mr. Liggins, and he responded, "[A]t least the rumor makes me look good." (*Id.* ¶ 37).  Mr. Liggins allegedly did nothing to address the rumors.  The rumors intensified when Ms. Hughes "publicly declared on multiple occasions that she wanted [] Plaintiff and [Mr. Liggins] to marry.  These comments were often made in front of [] Plaintiff's colleagues, including her superiors and subordinates." (*Id.* ¶ 38).  As a result, TV One employees and senior executive openly discussed rumors that Plaintiff and Mr. Liggins were romantically involved.

In 2008, Plaintiff received a promotion and was named Vice President of Talent Resources and Casting.  In order to obtain the promotion, Plaintiff compiled a list of job-related accomplishments and sought approval from her then-supervisor – actions that Plaintiff alleges were not required of other employees.  Plaintiff further asserts that, since her promotion, she "was never provided any advancement opportunity within TV

Once despite her stellar work performance and proven successes." (*Id.* ¶ 45).   In July 2011, Mr. Rodgers allegedly warned Plaintiff that "Ms. Hughes was strategizing on how to terminate" Plaintiff's employment.  (*Id.* ¶ 48).

According to Plaintiff, Ms. Hughes "exhibited mercurial, volatile, disruptive and abusive behavior toward [] Plaintiff." (*Id.* ¶ 46).   As a result, Plaintiff alleges that she "began seeking therapy to help her cope with the stress and anxiety." (*Id.* ¶ 47).   In 2012, Plaintiff took ten days of approved vacation to get married.  When Plaintiff returned to work, "Ms. Hughes went to [] Plaintiff's office to publicly chastise her for taking too much time off."  (*Id.* ¶ 50).  Plaintiff alleges that, during a high-profile event several months later, Ms. Hughes demanded that Plaintiff serve as Ms. Hughes' personal assistant, thereby preventing Plaintiff from fulfilling her own job-related responsibilities.   Plaintiff asserts that, during her employ at TV One, she made several complaints of discrimination and harassment to her supervisors, the legal department, and the human resources department.  In addition, Plaintiff spoke to Mr. Liggins in February 2013 about relocating to TV One's Los Angeles office, but her request was denied. Plaintiff asserts that her former position at TV One is now located out of the Los Angeles office.

At a gathering of TV One employees in January 2014, Mr. Liggins discussed the history of the company and screened a video demo reel. Plaintiff contends that, during his speech, "Mr. Liggins falsely stated that while he was on a business trip in Los Angeles . . . Plaintiff joined him in his hotel room to review the [video]." (*Id.* ¶ 58). According to Plaintiff, these remarks "further fueled rumors that [Mr. Liggins] and [] Plaintiff were either romantically and/or sexually involved." (*Id.*). Plaintiff again complained to her supervisor, but no action was taken. In June 2014, Plaintiff complained to the human resources department regarding TV One's compensatory leave policy. Again, Plaintiff asserts that no action was taken on her behalf.

According to Plaintiff, her employment was terminated in June 2014 following a dispute with Ms. Hughes regarding the Essence Music Festival (the "Festival"). Plaintiff alleges that TV One and Walmart agreed that the R&B Divas were booked for an exclusive performance on the Walmart stage. Plaintiff's supervisor informed Plaintiff that Ms. Hughes' personal friend wanted the R&B Divas to perform on the McDonald's stage at the Festival. Concerned about jeopardizing TV One's relationship with Walmart, Plaintiff communicated with the talent manager and TV One's account representative handling the Walmart account. Subsequently, Plaintiff issued instructions to notify Ms.

Hughes' friend "that TV One was unable to accommodate her request because of an existing agreement with Walmart." (*Id.* ¶ 68). On June 22, 2014, Ms. Hughes called Plaintiff and "berated [her] . . . for not obliging [Ms. Hughes'] friend's request. . . . Ms. Hughes criticized [] Plaintiff for not disregarding all protocol and procedure on account of her friend's request." (*Id.* ¶ 69). In addition, Ms. Hughes demanded that Plaintiff participate on a conference call the following day, but Plaintiff informed Ms. Hughes that she would be unavailable and on approved leave out of town visiting her husband's family. Ms. Hughes allegedly shouted at Plaintiff, referred to her as "arrogant" and "incompetent," and told her, "I don't give a damn about your husband's family." (*Id.* ¶ 70). Ms. Hughes said in reference to Plaintiff, "I don't know who the hell this girl thinks she is, but I am writing her ass up." (*Id.*).

The following day, Plaintiff contacted the human resources department to complain about Ms. Hughes' conduct. When Plaintiff spoke to Human Resources Vice President Sharon Alston, Plaintiff recounted the incident at the Festival and provided a full history of her treatment at TV One. In response, Ms. Alston informed Plaintiff that she was being placed on administrative leave pending an investigation. On June 26, 2014, Plaintiff sent to Ms. Alston a written complaint of gender discrimination and harassment. Later that day, Plaintiff was

informed by letter (the "termination letter") that her employment had been terminated effective June 24.

**B. Procedural Background**

Plaintiff filed a charge of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant on August 5, 2014. (ECF Nos. 16 ¶ 6; 21-2). The EEOC issued Plaintiff a Right to Sue letter in February 2015, and Plaintiff timely initiated this action in the Superior Court of the District of Columbia on May 13, 2015. (ECF No. 1-1, at 4). Defendant removed this action to the United States District Court for the District of Columbia based on federal question jurisdiction over claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (ECF No. 1). Defendant moved to dismiss the complaint for improper venue or, in the alternative, transfer venue to the United States District Court for the District of Maryland. (ECF No. 7). Subsequently, the parties filed a joint stipulation agreeing to transfer the case to this court (ECF No. 8), and the case was transferred (ECF No. 9).

On July 28, 2015, Plaintiff filed a two-count amended complaint against Defendant. (ECF No. 16). In Count I, Plaintiff alleges that Defendant discriminated against her on the basis of her gender in violation of Title VII. Plaintiff contends that Defendant fostered "a hostile work environment

that included, among other things, severe and pervasive harassment." (*Id.* ¶ 82). Count II contains allegations that Defendant retaliated against Plaintiff in violation of Title VII. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. Defendant moved to dismiss the amended complaint on August 14, 2015. (ECF No. 21). Plaintiff responded in opposition (ECF No. 25), and Defendant replied (ECF No. 26).

## II. Standards of Review

The arguments Defendant raises in its motion to dismiss - *i.e.*, failure to exhaust administrative remedies and failure to state a claim — potentially implicate multiple standards of review. First, Defendant's argument that Plaintiff failed to raise certain allegations before the EEOC within the statutory timeframe might be analyzed under Fed.R.Civ.P. 12(b)(1) if a Title VII plaintiff's failure to exhaust administrative remedies would deprive the federal court of subject matter jurisdiction over such claims. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens—Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore *et al.*, Moore's Federal Practice § 12.301 (3d ed. 1998)). The plaintiff always bears the burden of demonstrating that

subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Dismissal for lack of subject matter jurisdiction is appropriate "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted). In its analysis, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citation omitted).

Second, Defendant's argument that the amended complaint fails to state a plausible claim for relief is governed by Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further

factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* To this end, "while a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citations omitted); *see also McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).[2]

## III. Analysis

Defendant argues that Plaintiff's Title VII claims of discrimination and retaliation are subject to dismissal for two

---

[2] Defendant attaches to its motion to dismiss Plaintiff's EEOC charge (ECF No. 21-2) and the termination letter (ECF No. 21-3). Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a motion under Rule 12(b)(6). *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 995–97 (4th Cir. 1997).

Here, Defendant's motion will not be treated as one for summary judgment, and the court will not consider Defendant's extraneous materials. The motion to dismiss did not provide Plaintiff notice of potential conversion. *See Warner v. Quilo*, No. ELH-12-248, 2012 WL 3065358, at *2 (D.Md. July 26, 2012) ("When the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur[.]" (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998))).

reasons.    First,  Defendant  contends  that  Plaintiff  failed  to
exhaust  her  administrative  remedies.    Second,  Defendant  asserts
that  the  amended  complaint  fails  to  state  a  plausible  claim  for
relief  under  either  the  anti-discrimination  or  anti-retaliation
provisions of Title VII.

   **A.    Subject Matter Jurisdiction under Rule 12(b)(1)**

   Title  VII  requires  that  a  plaintiff  file  a  charge  of
discrimination  with  the  EEOC  before  suing  in  federal  court.
*Jones*, 551 F.3d at 300-01.   Although the EEOC charge defines the
scope  of  the  right  to  file  a  subsequent  civil  suit,  the  initial
administrative  complaint  does  not  create  strict,  unbendable
limits  on  those  subsequent  rights.    Rather,  the  scope  of  the
civil  action  is  confined  to  "those  discrimination  claims  stated
in  the  initial  charge,  those  reasonably  related  to  the  original
complaint,  and  those  developed  by  reasonable  investigation  [of
that complaint]."   *Id.* at 300; *see Evans v. Techs. Applications
&  Serv.  Co.*,  80  F.3d  954,  962-63  (4th  Cir.  1996)  ("The
allegations  contained  in  the  administrative  charge  of
discrimination  generally  operate  to  limit  the  scope  of  any
subsequent  judicial  complaint.").    The  exhaustion  inquiry  is
critical  because  "federal  courts  lack  subject  matter
jurisdiction  over  Title  VII  claims  for  which  a  plaintiff  has
failed to exhaust administrative remedies."  *Balas v. Huntington
Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013).

Here, however, Defendant does not argue that Plaintiff failed to raise claims of discrimination and retaliation in her EEOC charge.  Instead, Defendant contends that Plaintiff failed to file a timely charge of discrimination.  Defendant thus urges the court to "dismiss Plaintiff's claims that she was subjected to any alleged sexual harassment occurring more than 300 days before August 5, 2014, the date Plaintiff filed her EEOC [c]harge."  (ECF No. 21-1, at 18); *see* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (explaining that "[e]ach incident of discrimination and each retaliatory adverse employment decision" must be alleged within the appropriate timeframe because each one represents actionable conduct).  The timely filing of an administrative complaint "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Accordingly, Defendant raises a timeliness defense properly considered under Rule 12(b)(6).  To the extent Defendant moves to dismiss the amended complaint for lack of subject matter jurisdiction under Rule 12(b)(1), its motion is denied.

14

**B.     Failure to State a Claim under Rule 12(b)(6)**

**1.   Timeliness**

Generally, under Title VII, a charge of discrimination must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 621 (2007) ("[T]he time for filing a charge of employment discrimination with the [EEOC] begins when the discriminatory act occurs.").  In a "deferral" jurisdiction, however, the period is extended to 300 days.  *See Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 n.3 (4th Cir. 2002); *Prelich v. Med. Res., Inc.*, 813 F.Supp.2d 654, 661 (D.Md. 2011).  Maryland is a deferral state under Title VII, and the 300-day timeframe applies.  *See, e.g., Burgess v. Sys. High Corp.*, No. ELH-14-3895, 2015 WL 6956516, at *3 (D.Md. Nov. 10, 2015) (citations omitted).  The statutory window applies to any "discrete acts" of discrimination, "such as termination, failure to promote, denial of transfer, or refusal to hire . . . .  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  *Morgan*, 536 U.S. at 114.  "Charges filed outside [the statutory window] are barred, but a discriminatory allegation may still constitute relevant background evidence for

valid claims." *Techs. Applications*, 80 F.3d at 962 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977)).

Here, Plaintiff filed a charge of discrimination and retaliation with the EEOC on August 5, 2014. (ECF No. 16 ¶ 6). According to Defendant, "Plaintiff has not pled facts sufficient to show that the conduct she complains of occurred within [300 days]" of filing her EEOC charge, or after October 9, 2013. (ECF No. 21-1, at 20). The amended complaint contains allegations of discrimination or harassment occurring in January and June 2014, and Plaintiff argues that the continuing violation theory allows the court to look beyond the EEOC filing period. (ECF No. 25, at 8-9).

> Under the continuing violation theory, "[i]f one act in a continuous history of discriminatory conduct falls within the charge filing period, then acts that are plausibly or sufficiently related to that act, which fall outside the filing period, may be considered for purposes of liability." *Lewis v. Norfolk S. Corp.*, 271 F.Supp.2d 807, 812 (E.D.Va. 2003). The continuing violation theory applies to hostile work environment claims, which are "composed of a series of separate acts that collectively constitute one unlawful employment practice" and are timely if "an[y] act contributing to the claim occur[red] within the filing period." *Morgan*, 536 U.S. at 117 ("It does not matter . . . that some of the component acts of the [claim] fall outside the statutory time period."). The acts that occur within the filing period need not, standing alone, constitute a violation of Title VII for the continuing violation doctrine to apply. *See*

16

> *Gilliam v. S. Carolina Dep't of Juvenile Justice*, 474 F.3d 134, 141 (4th Cir. 2007).

*Williams v. Silver Spring Volunteer Fire Dep't*, 86 F.Supp.3d 398, 411 (D.Md. 2015); *see White v. BFI Waste Servs., LLC*, 375 F.3d 288, 293 (4th Cir. 2004) (holding that a hostile work environment claim "may appropriately extend even to acts that occurred before the relevant limitations period, because the hostile work environment continued within the limitations period as well").

Central to Plaintiff's claim are allegations of persistent accusations, rumors, and urging of a romantic relationship with her male supervisor, Mr. Liggins.  The amended complaint describes numerous instances of alleged harassment by Ms. Hughes and Mr. Liggins.  These allegations culminate with the events of January and June 2014, within the EEOC filing period.  Thus, the events occurring within the relevant limitations period are sufficiently related to allegations of prior harassing conduct. *See Gilliam*, 474 F.3d at 141 (concluding that the continuing violation doctrine applied to supervisor reprimands outside the charge filing period because the plaintiff alleged that similar reprimands occurred within the filing period); *Nesbitt v. Univ. of Maryland Med. Sys.*, No. WDQ-13-0125, 2013 WL 6490275, at *4 (D.Md. Dec. 6, 2013) (connecting allegations of conduct occurring within the filing period to prior events during which

17

the plaintiff's supervisor "yell[ed] at [her], interrupt[ed] her while she spoke at meetings, 'demean[ed]' her with 'inappropriate' and 'condescending' comments, and treat[ed] male and younger employees more favorably").    The continuing violation doctrine potentially applies, and Defendant has not shown that dismissal of Plaintiff's claims is warranted.

### 2.    Gender Discrimination

Title VII prohibits discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2525 (2013).   In Count I, Plaintiff asserts claims of gender discrimination based on unlawful harassment in violation of Title VII.[3]

---

[3] Here, Count I asserts that Defendant discriminated against Plaintiff on the basis of gender "by denying her equal terms and conditions of employment, including . . . subjecting her to disparate working conditions, denying her the opportunity to work in an environment free of unlawful harassment and denying her compensation and other benefits given to similarly-situated colleagues."  (ECF No. 16 ¶ 81).   Generously construing Count I to include a claim for discriminatory termination or discrimination in the terms and conditions of employment, Defendant argues that Plaintiff fails to state claim.   (ECF No. 21-1, at 26-30).   Plaintiff declines to challenge Defendant's argument in her response and thereby abandons any claims for discriminatory discharge or discrimination in the terms and conditions of employment. *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010) (citing *Mentch v. Eastern Savings Bank, FSB*, 949 F.Supp. 1236, 1247 (D.Md. 1997)). Accordingly, to the extent Count I alleges unlawful gender discrimination beyond a claim for hostile work environment, Plaintiff's claims will be dismissed under Rule 12(b)(6).

>Courts have long endorsed and adopted the EEOC's interpretation that sexual harassment is a form of prohibited sex discrimination. *See Merit or Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986). Actionable workplace sexual harassment claims come in two forms: (1) claims of a hostile work environment due to severe or pervasive sexual harassment and (2) claims of *quid pro quo* sexual harassment. *See Fitter v. Cmty. Imaging Partners, Inc.*, 735 F.Supp.2d 379, 390 (D.Md. 2010).

*Bruce v. Fair Collections & Outsourcing, Inc.*, No. CCB-13-3200, 2014 WL 3052477, at *3 (D.Md. June 30, 2014). Here, Plaintiff claims that she was subjected to a hostile work environment on the basis of gender as a result of "severe and pervasive harassment of [] Plaintiff by her supervisors." (ECF No. 16 ¶ 82).

To state a claim for hostile work environment, Plaintiff "must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citation omitted). In addition, Plaintiff must show not only that she subjectively believed that her workplace environment was hostile, but also that a reasonable person would have found it to be objectively hostile. *Id.* (citing *E.E.O.C.*

*v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)).
Plaintiff must, of course, "assert facts establishing the
plausibility of" the discrimination allegation. *Coleman*, 626
F.3d at 190-91. The allegations must "alone support a
reasonable inference that the decisionmakers were motivated by
[impermissible] bias." *McCleary-Evans*, 780 F.3d at 586 (citing
*Iqbal*, 556 U.S. at 678). Indeed, in *McCleary-Evans*, the United
States Court of Appeals for the Fourth Circuit upheld a district
court's dismissal of an employment discrimination complaint
because it left "open to speculation the cause for the
defendant's decision to select someone other than" the
plaintiff, and discrimination was "not plausible in light of the
'obvious alternative explanation' that the decisionmakers simply
judged those hired to be more qualified and better suited for
the positions." *Id.*

Here, because the amended complaint makes clear that the
alleged harassment was unwelcome and attributes it to
Plaintiff's supervisors, the first and fourth elements are
pleaded satisfactorily. Furthermore, Defendant concedes as much
in challenging only the second and third elements of Plaintiff's
*prima facie* case: that the conduct complained of was not sex-
based (ECF No. 21-1, at 24), and that the conduct was not
sufficiently severe or pervasive (*id.* at 24-26).

### a.   Harassment Based on Gender

To establish that the conduct was based on gender, Plaintiff must show that she was targeted because of her gender. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242–43 (4th Cir. 2000) (noting that "[e]xplicit and derogatory references to women appear in virtually all of [the supervisor's] harassing remarks").   To do so, Plaintiff must show that "but for" her gender, she "would not have been the victim of the alleged discrimination." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).   Gender-based animosity can be shown by direct evidence of discrimination, or differential treatment of similarly situated male employees.   *See Gilliam*, 474 F.3d at 142; *Causey*, 162 F.3d at 801–02.   Plaintiff need not show that "sexual advances or propositions" were involved.   *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (internal citation omitted).

In *Ocheltree*, the Fourth Circuit determined that "much of the sex-laden and sexist talk and conduct in the production shop was aimed at [the plaintiff] because of her sex . . . . Much of the conduct, a jury could find, was particularly offensive to women and was intended to provoke [the plaintiff's] reaction as a woman."   *Id.* at 332.   Here, Plaintiff alleges that she was humiliated (ECF No. 16 ¶ 25), "publicly chastise[d]" (*id.* ¶ 50),

and "berated" (*id.* ¶ 69) by Ms. Hughes because she resisted a romantic relationship with Ms. Hughes' son, Mr. Liggins.  In addition, she was the subject of workplace rumors that she and Mr. Liggins were romantically involved.  (*Id.* ¶¶ 36, 39, 58).  According to Plaintiff, "[t]here is nothing gender neutral about this offensive treatment."  (ECF No. 25, at 12).  Put simply, but for her status as a woman in the workplace, Plaintiff would not have been subjected to alleged harassment by her supervisors.  Taken as true, the factual allegations in the amended complaint raise a reasonable inference that the purported harassment occurred because of gender.  Accordingly, Plaintiff sufficiently alleges that she was the individual target of harassment because she is a woman.

**b.   Severe and Pervasive Conduct**

A hostile work environment is marked by "extreme" conduct, and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  The conduct must be both subjectively and objectively offensive in order to be cognizable under Title VII.  *See id.* at 787; *Sunbelt Rentals*, 521 F.3d at 315.  In determining whether the offending conduct was sufficiently severe or pervasive, the court must consider: "(1) the frequency of the discriminatory conduct; (2) its

severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Smith*, 202 F.3d at 242; *see also Sunbelt Rentals*, 521 F.3d at 315. Furthermore, "[t]he behavior need not be both severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 669 n.15 (D.Md. 2008) (citations omitted). Plaintiffs in the Fourth Circuit:

> must clear a high bar in order to satisfy the severe or pervasive test. Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," *Baqir v. Principi,* 434 F.3d 733, 747 (4th Cir. 2006), "callous behavior by [one's] superiors," *Bass,* 324 F.3d at 765, or "a routine difference of opinion and personality conflict with [one's] supervisor," *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 276 (4th Cir.2000), are not actionable under Title VII.

*Sunbelt Rentals*, 521 F.3d at 315-16. "[A] supervisor's strict management style or degree of supervision is not evidence of actionable harassment. However, a work environment can be considered hostile if it is consumed by remarks that intimidate, ridicule, and maliciously demean the status of women." *Engler*

*v. Harris Corp.*, No. GLR-11-3597, 2012 WL 3745710, at *5 (D.Md. Aug. 28, 2012) (citations and internal quotation marks omitted).

Here, Defendant acknowledges that Plaintiff "pleads ten purported incidents of unwanted or inappropriate conduct . . . by Ms. Hughes over the course of ten years." (ECF No. 26, at 6). Defendant, however, does not account for Plaintiff's allegation that Ms. Hughes "publicly declared on multiple occasions that she wanted [] Plaintiff and [Mr. Liggins] to marry. These comments were often made in front of [] Plaintiff's colleagues, including her superiors and subordinates." (ECF No. 16 ¶ 38). Plaintiff points to specific colleagues who "openly discussed the rumors that [she] and Mr. Liggins were romantically involved." (*Id.* ¶ 39). Although each incident alleged by Plaintiff, standing alone, is likely not severe enough to state a claim for hostile work environment, the court cannot ignore the cumulative effect of continuous harassment plausibly alleged by Plaintiff. *See Sunbelt Rentals*, 521 F.3d at 318; *Nesbitt*, 2013 WL 6490275, at *6.

Plaintiff plausibly alleges that, in addition to being pervasive, the conduct was sufficiently severe or abusive to create a hostile work environment. "When evaluating the context in which harassment takes place, [the Fourth Circuit has] often focused on the disparity in power between the harasser and the victim." *E.E.O.C. v. Fairbrook Med. Clinic, P.A.*, 609 F.3d 320,

329 (4th Cir. 2010) (citation and internal quotation marks omitted). The severity of the alleged harassment is exacerbated when a supervisor is the tormentor. *See Emond v. Corr. Med. Servs., Inc.*, No. 10-1680, 2011 WL 2712749, at *7 (D.Md. July 12, 2011). As Ms. Hughes and Mr. Liggins exercised significant authority over Plaintiff, the severity of the alleged harassment is enhanced. In addition, degrading and humiliating conduct can be severe or pervasive even if not physically threatening. *See Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 698-99 (4th Cir. 2007). Plaintiff contends that she "suffered severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, [and] low self-esteem and self-confidence." (ECF No. 16 ¶ 84); *see Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001) (noting that damage to a plaintiff's psychological well-being is relevant to establishing whether the environment was hostile). As a result of Ms. Hughes' conduct and the persistent workplace rumors that Plaintiff attributes to several TV One employees, Plaintiff alleges that she sought therapy in an effort to cope. (*Id.* ¶ 47). These factual allegations are sufficient to support a plausible inference that Plaintiff "subjectively perceive[d] the environment [was] abusive" such that "the conduct . . . actually altered the conditions of [her]

employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *see Reed*, 531 F.Supp.2d at 669.

Assuming the truth of the allegations in the amended complaint, Plaintiff plausibly states a hostile work environment claim.  That is, she describes an environment that discovery might reveal as hostile.  *See Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir. 1989) (recognizing that "[w]hether [the plaintiff's] harassment was sufficiently severe or pervasive is quintessentially a question of fact").  Accordingly, the motion to dismiss Plaintiff's hostile work environment claim in Count I will be denied.

### 3.  Retaliation

Title VII also prohibits retaliation by the employer against employees who engage in a protected activity.  42 U.S.C. § 2000e-3(a).  Protected activity includes opposing "unlawful employment practice[s] [under] this subchapter" or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in . . . [a Title VII] investigation, proceeding, or hearing[.]" *Id.*  To establish a *prima facie* case of retaliation, Plaintiff ultimately will have to demonstrate: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action.  *See Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).

26

In Count II, Plaintiff alleges that Defendant retaliated against her due to her opposition to and complaints concerning alleged harassment. (ECF No. 16 ¶ 87). Defendant challenges whether the allegations in the amended complaint are sufficient to state a claim for retaliation. (ECF No. 21-1, at 30). According to Defendant, Plaintiff fails to allege both that she engaged in protected activity and that a causal connection existed between a protected activity and some adverse employment action. In June 2014, Plaintiff made oral and written complaints to Ms. Alston in the human resources department about Ms. Hughes' persistent harassment. (ECF No. 16 ¶¶ 73-75). Plaintiff also contends that, "between the period of June 2012 to December 2013, [she] made several complaints to her supervisor, Monica [N]eal . . . about the harassment." (*Id.* ¶ 53). Plaintiff thus sufficiently pleads that she engaged in protected activity.[4] *See Laughlin*, 149 F.3d at 259 ("[Protected] activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in

---

[4] To the extent that prior instances of oppositional activity form the basis of Plaintiff's retaliation claims, they are time-barred. (*See* ECF No. 26, at 13). Purported protected activity and adverse employment action falling outside Title VII's statutory window – that is, occurring before October 9, 2013 – do not allow Plaintiff to state a claim. *See Hylind v. Xerox Corp.*, 380 F.Supp.2d 705, 709-10 (D.Md. 2005), *aff'd*, 481 F.App'x 819 (4th Cir. 2012) (noting that retaliation claims are timely if the purported protected activity or retaliatory conduct occurred within the limitations period).

order to bring attention to an employer's discriminatory activities.").

An adverse employment action is one that "a reasonable employee would have found . . . materially adverse" such that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). Here, Plaintiff asserts that TV One employees retaliated against her by "harassing her, threatening her, humiliating her, stripping her of important responsibilities . . . extended to other employees, and undermining her ability to effectively perform her job." (ECF No. 16 ¶ 87). Plaintiff argues that when she first refused Ms. Hughes' matchmaking overtures, Ms. Hughes retaliated against her by "immediately start[ing] unwarranted criticism of Plaintiff's job performance, including publicly berating her and threatening her with termination." (ECF No. 25, at 16).

Although not particularly clear or focused, the amended complaint contains cognizable allegations of adverse employment action in the form of the denial of Plaintiff's transfer request in February 2013 and the termination of her employment in June 2014, but not otherwise. Regarding the former, the amended complaint specifically alleges that the transfer denial was retaliatory (*id.* ¶ 57), but Plaintiff's retaliation claim is

28

time-barred.    Any  relevant  protected  activity  and  adverse employment action occurred outside of the statutory limitations window.    Regarding  Plaintiff's  dismissal  from  TV  One,  however, the  amended  complaint  states  a  plausible  retaliation  claim. Plaintiff's  factual  recitation  concludes  with  her  dismissal, which   surely   constitutes   an   action   stripping   her   of responsibilities and privileges of employment.    Plaintiff argues that,  "after  [she]  lodged  a  verbal  and  written  complaint alleging  continued  harassment  and  discrimination,  [she]  was fired,  clearly  an  adverse  employment  action."    (ECF  No.  25,  at 17).    In  addition,  if  the  employer  takes  adverse  action  "shortly after"  learning  about  the  protected  activity,  courts  may  infer  a causal  connection  between  the  two.    *Price v. Thompson*, 380 F.3d 209,  213  (4th  Cir.  2004);  *see  Finnegan  v.  Dep't  of  Pub.  Safety  & Corr.  Servs.*,  184  F.Supp.2d  457,  463  (D.Md.  2002).    Where temporal  proximity  is  the  only  evidence  of  causation,  however, "the  temporal  proximity  must  be  very  close,"  as  it  is  here. *Clark  Cnty.  Sch.  Dist.  v.  Breeden*,  532  U.S.  268,  273  (2001). Plaintiff's  dismissal  occurred  within  three  days  of  her  verbal and  written  complaints  to  the  human  resources  department.

Accordingly,  the  amended  complaint  states  a  plausible  claim for  retaliation.    Plaintiff's  retaliatory  termination  claim remains,  and  Defendant's  motion  to  dismiss  Count  II  will  be denied.

**IV.   Conclusion**

For the foregoing reasons, Defendant's motion to dismiss will be denied.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
