IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NIKKI WEBBER ALLEN                :

   v.                             :   Civil Action No. DKC 15-1960

TV ONE, LLC                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are a motion to quash subpoena and for protective order, filed by Defendant TV One, LLC ("Defendant" or "TV One") (ECF No. 53), and two motions to compel discovery, filed by Plaintiff Nikki Webber Allen ("Plaintiff") (ECF Nos. 68; 70).[1]  The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6.  For the following reasons, Defendant's motion to quash subpoena and for protective order will be denied, and Plaintiff's motions to compel will be denied.

**I. Background**

A more complete recitation of the factual background can be found in the court's prior memorandum opinion denying Defendant's motion to dismiss.  (ECF No. 27, at 1-8).  In Count I of her amended complaint, Plaintiff alleges that Defendant,

---

[1] As noted below, other motions are still in the briefing stage.

her former employer, discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. (ECF No. 16). Plaintiff contends that Defendant fostered "a hostile work environment that included, among other things, severe and pervasive harassment." (*Id.* ¶ 82). She alleges that Catherine Hughes, TV One's founder, chairperson, board member, and television show host, and the chairperson and founder of TV One's parent company, Radio One, Inc. ("Radio One") (*see* ECF Nos. 59-1, at 2 & n.1; 2, at 2), subjected her "to a pervasive pattern of sexual harassment and gender discrimination," and that the actions of Alfred Liggins, Ms. Hughes' son and the Chief Executive Officer and President of both TV One and Radio One (*see* ECF Nos. 47-1, at 4; 59, at 2), "exacerbated the hostile work environment created by his mother and resulted in further sexual harassment." (*Id.* ¶¶ 18, 38). Count II alleges that Defendant retaliated against Plaintiff in violation of Title VII when Plaintiff's employment was terminated in June 2014 after she had a dispute with Ms. Hughes and filed a complaint of gender discrimination and harassment with TV One's human resources department. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Plaintiff's motion for leave to amend the amended complaint to add Radio One as a defendant, and to serve additional

discovery requests, was denied for failure to show good cause under Fed.R.Civ.P. 16 on October 14, 2016. (ECF No. 74). Discovery closed on September 30 (*see* ECF No. 67), but scheduling of dispositive motions awaits the resolution of the parties' discovery disputes.[2] Defendant has moved to quash the deposition subpoena served on Karen Wishart, its former executive vice president and chief legal officer, and for a protective order preventing the deposition. (ECF No. 53). Plaintiff filed an opposition (ECF No. 65), and Defendant replied (ECF No. 71). Plaintiff has filed two motions to compel discovery responses. (ECF Nos. 68; 70). Defendant filed a response in opposition to both motions (ECF No. 73), and Plaintiff replied (ECF No. 77).

## II. Defendant's Motion to Quash Subpoena and for Protective Order

### A. Standard of Review

Defendant has moved to quash and for a protective order as to the deposition subpoena Plaintiff issued to Karen Wishart, Defendant's former executive vice president and chief legal officer. (ECF No. 53). "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under

---

[2] In addition to the three motions addressed herein, Defendant has filed two motions to quash third party subpoenas, which are not yet fully briefed. (ECF Nos. 80; 81). The resolution of those motions should not affect the briefing schedule, however.

Rule 26. Thus, regardless of whether the Court considers Plaintiff's Motion under Rule 45 or Rule 26, the Court must review Defendant's subpoenas under the relevancy standards set forth in Rule 26(b)." *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240-41 (E.D.Va. 2012) (citations omitted) (citing *Cook v. Howard,* 484 F.App'x 805, 812 (4th Cir. 2012) (per curiam)). Pursuant to Fed.R.Civ.P. 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A subpoena which "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden," however, must be quashed or modified. Fed.R.Civ.P. 45(d)(3)(A)(iii)-(iv).

The Rules do not prohibit deposing the attorney of an opposing party, but efforts to do so typically are "view[ed] skeptically" and "permitted only when the information sought is not available from another source." *Carr v. Double T Diner*, 272 F.R.D. 431, 435 (D.Md. 2010). *But see BB&T Corp. v. United*

4

*States*, 233 F.R.D. 447, 449-50 (M.D.N.C. 2006) (noting that the "stringency" of the rule disfavoring depositions of a party's attorney "may not necessarily apply to the party's non-trial attorney, *i.e.* a former attorney or in-house counsel"). Generally, the party seeking the deposition must "establish a legitimate basis for requesting the deposition and demonstrate that the deposition will not otherwise prove overly disruptive or burdensome." *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C. 1987). When the attorney is to be deposed as a fact witness, and the deposition seeks relevant, nonprivileged information, "his or her deposition may be 'both necessary and appropriate.'" *Carr*, 272 F.R.D. at 431 (quoting *N.F.A.*, 117 F.R.D. at 85 n.2); *see also* Jay E. Grenig & Jeffrey S. Kinsler, *Handbook of Federal Civil Discovery & Disclosure* § 5:6 (4th ed. 2016) (citing *N.F.A.*, 117 F.R.D. at 85 n.2) ("The courts have recognized that if an attorney is a witness of or actor in prelitigation conduct, the attorney may be deposed the same as any other witness.").[3]

---

[3] Defendant applies the stringent three-part test set forth by the United States Court of Appeals for the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). The United States Court of Appeals for the Fourth Circuit has not adopted the *Shelton* standard, and *Shelton* is nevertheless inapplicable here. The Eighth Circuit has clarified that *Shelton* "was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy. . . . [T]his Court erected the *Shelton* test as a barrier to protect

**B. Analysis**

Plaintiff seeks to depose Ms. Wishart as a fact witness regarding her observations and nonprivileged conversations that are relevant to Plaintiff's discrimination claim. For example, Plaintiff seeks to depose Ms. Wishart to corroborate Plaintiff's account of a conversation between herself, Ms. Wishart, and Plaintiff's supervisor at a social event, during which Plaintiff's supervisor allegedly advised Plaintiff that Ms. Hughes wanted her to be fired. (ECF Nos. 65, at 3; 65-1, at 18). Plaintiff also seeks to depose Ms. Wishart regarding the complaints of harassment Plaintiff has testified that she made to Ms. Wishart. (ECF Nos. 65, at 3; 65-1, at 5, 7, 9-10, 14-18). Defendant argues that the subpoena should be quashed because the deposition is unnecessary and intrusive and the information sought may be obtained from other witnesses. (ECF No. 53-1, at 2, 9). Defendant further contends that, because Ms. Wishart was Defendant's legal counsel, "any deposition questions posed to Ms. Wishart concerning any matters arising

---

*trial attorneys* from these depositions." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 732, 730 (8th Cir. 2002) (emphasis added) (holding that *Shelton* test did not apply to deposition of opposing counsel regarding representation of the same client in a previous case). Here, Plaintiff seeks to depose, as a fact witness, Defendant's former in-house counsel, who left Defendant's employ more than a year before Plaintiff filed her EEOC claim or this lawsuit. Ms. Wishart is not opposing counsel in this case, and her deposition could not lead to the disclosure of Defendant's litigation strategy. The *Shelton* test is inapplicable.

during her tenure as TV One's counsel would delve into privileged and confidential matters protected by TV One's attorney-client privilege" and "will inevitably cause Ms. Wishart to reveal her mental impressions regarding legal matters that are subject to protection as attorney work product." (*Id.* at 1).

### 1. Relevance

It is undisputed that Ms. Wishart is not Defendant's counsel of record in this litigation and has not been Defendant's in-house counsel at any time during this litigation. Defendant has, in fact, clearly stated that "Ms. Wishart did not become involved in any matter relating to any timely claims brought by Plaintiff in this case." (*Id.* at 6). There is no concern here that this deposition could reveal litigation strategy or is sought to delay these proceedings, abuse discovery, or harass opposing counsel. Furthermore, the information sought through the fact deposition of this nonparty witness could not be obtained through interrogatories or other discovery requests to Defendant, or through the fact depositions of other nonparty witnesses, as Defendant suggests. (*See id.* at 8-9). Plaintiff seeks to depose Ms. Wishart as a fact witness because she has personal knowledge of specific facts that are

relevant to Plaintiff's discrimination claim.[4]  *See Carr*, 272 F.R.D. at 435.  Such discovery is plainly relevant and cannot be obtained from other sources.

### 2. Attorney-Client Privilege

Defendant next contends that "*any* deposition questions . . . concerning *any* matters arising during [Ms. Wishart's] tenure" would implicate matters protected by the attorney-client privilege.  (ECF No. 53-1, at 1 (emphasis added)).  While the attorney-client privilege extends to communications with in-house counsel, all communications with in-house counsel are not necessarily privileged.  *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383 (1981); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 410 (D.Md. 2005) ("The Fourth Circuit has spoken unequivocally on this point: 'it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality.'" (quoting *United States v.*

---

[4] Defendant also argues that the discovery sought is irrelevant because Ms. Wishart left TV One before the beginning of the statutory window for Plaintiff's retaliation claim. (ECF No. 53-1, at 4, 7-8).  Plaintiff seeks to depose Ms. Wishart regarding facts that are relevant to her discrimination claim, not her retaliation claim, however, and the court previously held that the continuing violation doctrine potentially applies to this claim. (ECF No. 27, at 18).  Matters throughout the entirety of Plaintiff's employment therefore may be relevant to her discrimination claim.

*(Under Seal)*, 748 F.2d 871, 874-75 (4th Cir. 1984))). The attorney-client privilege applies:

> [O]nly if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357, 358-59 (D.Mass. 1950)). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *Jones,* 696 F.2d at 1072. The privilege is narrowly construed, however, as it "impedes [the] full and free discovery of the truth." *Hawkins v. Stables*, 148 F.3d 379, 382-83 (4th Cir. 1998) (quoting *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir. 1984) (alteration in original)); *accord (Under Seal),* 748 at 874-75.

Ms. Wishart was employed as Defendant's executive vice president and chief legal officer from January 10, 2005, through February 8, 2013. (ECF No. 53-3 ¶ 3). During that time, she

"managed and oversaw" the legal department and "provided legal advice," which "sometimes involved conducting and overseeing Company investigations." (*Id.* ¶¶ 3-4). In addition, Defendant's human resources department reported to Ms. Wishart. (*Id.* ¶ 3). Because Ms. Wishart's role involved, by her own description, more than providing legal advice, whether specific communications are privileged will also depend on the purpose and context for which they were made. *See Neuberger Berman*, 230 F.R.D. at 422-23; *United States v. Cohn*, 303 F.Supp.2d 672, 684 (D.Md. 2004) (noting the necessity of distinguishing between communications of business advice and those of legal advice for questions of attorney-client privilege). It is not enough for Defendant to claim that a blanket attorney-client privilege protection applies to any matters on which Ms. Wishart could be deposed.

In addition to arguing generally that all topics on which Ms. Wishart could be deposed would implicate privileged information, Defendant specifically objects to questions regarding the complaints of harassment Plaintiff made to Ms. Wishart. Plaintiff has testified that she reported Ms. Hughes's harassment to Ms. Wishart - who, again, at least "organizationally" oversaw human resources (ECF Nos. 53-1, at 3; 53-5, at 2) - and that Ms. Wishart's response was "[t]hat she was going to see what she could do to get [Plaintiff] off TV One

On One," Ms. Hughes's show. (ECF No. 53-2, at 6, 10). Plaintiff also testified that Ms. Wishart subsequently "arranged" for her to stop working on Ms. Hughes's show. (*Id.*). While Defendant concedes that "the facts of Plaintiff's alleged complaints to Ms. Wishart are not in and of themselves privileged," Defendant argues that "any questions posed to Ms. Wishart concerning her reaction to and interactions with others concerning the purported complaints, and what Ms. Wishart considered or determined to be appropriate actions to be taken in response to Plaintiff's alleged complaints (or the complaint of any other employee) would be privileged." (ECF No. 53-1, at 8). Defendant contends that Ms. Wishart "would . . . be involved in any investigation of claims and in making recommendations and determining legal strategies, based on the investigation of such claims" in her capacity as Defendant's attorney. (*Id.*).

Defendant's reliance on *In re Allen*, 106 F.3d 582 (4th Cir. 1997), is misplaced. The Fourth Circuit recognized in *Allen* that, "if a client retains an attorney to use her legal expertise to conduct an investigation, that lawyer is indeed performing legal work," but it does not follow that any attorney conducting any investigation is necessarily performing legal work or that the privilege is applicable. 106 F.3d at 604. As the court explained, "The relevant question is not whether

11

[counsel] was retained to conduct an investigation, but rather, whether this investigation was 'related to the rendition of legal services.' . . . Of course, not all communications between an attorney and client during attorney-conducted investigations constitute legal work entitled to attorney-client privilege." *Id.* at 602-03 (citations omitted). Ms. Wishart declares that "[a]mong other things, my work sometimes involved conducting and overseeing Company investigations based on my legal expertise and solely in my capacity as in-house counsel in obtaining and/or delivering professional legal services to TV One, my then client." (ECF No. 53-3 ¶ 4). She does not aver that she conducted any such investigation into Plaintiff's alleged complaints, however. Even assuming there was an investigation of Plaintiff's alleged complaints related to the rendition of legal services, Defendant still has not shown that all of Ms. Wishart's communications would be privileged. Moreover, Ms. Wishart's role at TV One and Plaintiff's testimony that she was the decision maker regarding Plaintiff's complaints suggest that her role in any investigation or action involved business advice or business decision-making, not the provision of legal services. In sum, it is possible that some of Ms. Wishart's communications with Defendant's employees regarding Plaintiff's complaints are privileged, but Ms. Wishart's declaration regarding investigations generally and Defendant's assertions

are insufficient to show that all discovery sought by Plaintiff is privileged.

### 3. Work Product Protection

Finally, the deposition subpoena directs Ms. Wishart to bring copies of relevant records and documents. Defendant and Ms. Wishart, in her declaration, assert that work product protection applies to such documents, and that Defendant has not waived work product protection.

> Distinct from the attorney-client privilege, the work product doctrine belongs to the attorney and confers a qualified privilege on documents prepared by an attorney in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 509–14, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Grand Jury Proceedings, Thur. Special Grand Jury Sept. Term, 1991,* 33 F.3d 342, 348 (4th Cir.1994); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz,* 487 F.2d 480, 483, n.12 (4th Cir. 1973). "[M]aterials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes" do not constitute "documents prepared in anticipation of litigation" protected by work product privilege. *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992). As in the case of attorney-client privilege, the party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine. *In re Grand Jury,* 33 F.3d at 353.

*Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 231–32 (4th Cir. 2011). Here, too, Ms. Wishart and Defendant cannot assert a blanket protection, particularly given Defendant's

assertion that Ms. Wishart had no involvement in this litigation and that the events about which she could be deposed occurred years before this suit arose.  If Ms. Wishart has in her possession relevant and responsive documents to which she believes the work product protection applies because they were prepared in anticipation of litigation, and not in the ordinary course of business or for non-litigation purposes, she bears the burden of demonstrating the doctrine's applicability to those documents.  No such showing has been made.

Plaintiff has shown a legitimate basis for deposing Defendant's former in-house counsel.  The information Plaintiff seeks is relevant, not privileged, and not available from other sources.  There is no reason to conclude that this deposition would be overly disruptive or burdensome.  The deposition must steer clear of privileged information, and Defendant may object to any question it believes in good faith implicates privileged information, but Defendant's motion to quash and for a protective order will be denied.[5]

---

[5] Any good faith assertion of privilege at a deposition should provide sufficient information to enable Plaintiff to assess the claim and make a record that would permit meaningful judicial evaluation of the claim, in compliance with Fed.R.Civ.P. 26(b)(5) and the Discovery Guidelines of the United States District Court for the District of Maryland, Guideline 7.
    Plaintiff has also objected to the presence and conduct of Radio One's in-house counsel at previous depositions regarding assertions of privilege. (ECF No. 65, at 4 n.2).  Radio One's counsel's presence at past depositions is not relevant to the

**III. Plaintiff's Motions to Compel**

Plaintiff has filed two motions to compel responses to her discovery requests pursuant to Fed.R.Civ.P. 37, seeking nineteen categories of documents that she argues are responsive to numerous requests. (ECF Nos. 69; 70). Defendant filed a combined response in opposition (ECF No. 73), and Plaintiff filed a reply (ECF No. 77).[6]

The scope of discovery is broad; "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1). Pursuant to Fed.R.Civ.P. 34, a party may serve a request for production of designated documents or electronically stored information, described with reasonable particularity, that are within the scope of discovery and in the responding party's possession, custody, or control. If a party fails to produce documents requested under Fed.R.Civ.P. 34, the party seeking discovery may move for an order compelling production. Fed.R.Civ.P. 37(a)(3)(B)(iv). Pursuant to Local Rule 104.8(a), the memorandum in support of a motion to compel "shall set forth, as to each response to which

---

instant motion, but the parties should follow Guideline 6(h) regarding the presence and participation of nonparties at a deposition.

[6] The court excused the parties from following the Local Rule's procedures for serving motions to compel. (ECF No. 79, at 115-16).

the motion is directed, the discovery request, the response thereto, and the asserted basis for the insufficiency of the response."

Plaintiff's first motion to compel concerns Plaintiff's second request for production of documents. (*See* ECF No. 68-1, at 4-5).[7] Plaintiff's motion does not set forth these requests and Defendant's responses, but rather asserts for each category of documents that "Defendant has refused to produce all of these documents," and that "[i]t is clear that Defendant's response is insufficient." (*Id.*). Plaintiff was not entitled to any production of emails in response to her second request, because her first request for the production of documents included thirty requests, the maximum permitted under Local Rule 104.1 without consent of the parties or the court. Defendant did not consent to additional discovery requests, and Plaintiff's motion for leave to serve additional discovery requests, made in connection with her motion for leave to amend her complaint to add Radio One as a defendant, was denied. (ECF No. 74). Plaintiff also argues that these emails are responsive to requests in Plaintiff's first request for the production of documents and to requests from Plaintiff's first set of

---

[7] Plaintiff's second request for production sought all emails sent to or received from Plaintiff, D'Angela Proctor, Alfred Liggins, Sharon Alston, Linda Villardo, and Jackie Kindall between June 16 and June 23, 2014, or June 22 and June 26, 2014. (ECF Nos. 68-1, at 4-5; 47-15, at 6-7).

16

continuing interrogatories, but has neglected to set forth those requests and interrogatories and Defendant's responses. Moreover, Defendant contends that it previously produced all nonprivileged, responsive emails to or from Plaintiff, D'Angela Proctor, Alfred Liggins, and Sharon Alston during these periods, and asserts that the (uncited) deposition testimony of Linda Vilardo and Jackie Kindall established that there are no responsive, nonprivileged communications. (ECF No. 73, at 6-7). Plaintiff does not dispute this in her reply.[8]  Accordingly, Plaintiff's motion to compel production of these emails will be denied.

Plaintiff also moves to compel production of documents from the personnel records of TV One and Radio One employees. (ECF Nos. 68-1, at 6-7; 70-1, at 3-5). Plaintiff states that these discovery requests were made on the record during depositions, and that the documents are responsive to requests from her first request for the production of documents. Again, Plaintiff has not clearly set forth these requests or Defendant's responses. Moreover, the standard for considering disclosure of a personnel file is a balancing test between "the importance of personal

---

[8] Plaintiff does assert in her reply that Ms. Vilardo and Ms. Kindall did not produce documents in response to their deposition subpoenas. (ECF No. 77, at 2). Ms. Vilardo and Ms. Kindall were nonparty deponents, however; their alleged failures to comply with subpoenas are not pertinent to Plaintiff's motion to compel Defendant to produce documents in response to various requests for production and interrogatories.

privacy" and "the countervailing interest in broad discovery." *Hemphill v. ARAMARK Corp.*, No. ELH-12-1584, 2013 WL 1662963, at *2 (D.Md. Apr. 15, 2013) (citing *Kirkpatrick v. Raleigh County Bd. of Educ.*, 78 F.3d 579 (4th Cir. 1996) (Table)). "This test generally favors non-disclosure: personnel files, even if relevant, are only discoverable in 'limited circumstances,' such as when the 'need for disclosure is compelling because the information sought is not otherwise readily available.'" *Id.* (quoting *EEOC v. McCormick & Schmick's Seafood Rests.*, No. DKC-11-2695, 2012 WL 3563877 (D.Md. Aug. 16, 2012)). Plaintiff does seem to have tailored these requests to include only specific documents, but she offers almost no justifications for her requests. She does not explain, for example, the relevancy of disciplinary actions taken by nonparty Radio One against its employees. Plaintiff has not sufficiently shown that these records are relevant to her claims or responsive to her discovery requests for the court to compel the discovery of personnel files, and her motions will be denied.

Finally, Plaintiff seeks the "original handwritten notes that Sharon Alston took, copies of which were purportedly produced as D.001727-D.001729 [and] . . . [t]he original pad that Sharon Alston took the notes on that were referenced in D.001727-D.001729." (ECF No. 68-1, at 7). Plaintiff states that she made these requests during depositions, and that the

18

notes and pad are responsive to requests from Plaintiff's first and second requests for documents. (*Id.*). Here, too, Plaintiff does not properly set forth her requests or Defendant's responses. Defendant avers that its counsel allowed Plaintiff's counsel to inspect the original notes on September 29, 2016 (ECF No. 73, at 8), which Plaintiff does not dispute, and Plaintiff has not shown that the original pad itself, which Defendant states was not preserved (*id.*), is relevant. Accordingly, Plaintiff's motions to compel will be denied.

## IV. Conclusion

For the foregoing reasons, the motion to quash and for protective order filed by Defendant TV One, LLC will be denied, and the motions to compel filed by Plaintiff Nikki Webber Allen will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge